UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------- X

COLLEGE ESSAY OPTIMIZER, LLC,
d/b/a COLLEGE ESSAY ORGANIZER, and
METRO ACADEMIC PREP, INC.

                       Plaintiffs,

      -against-

SIMPLE SOLUTIONS, INC.,

                  Defendant.

------------------------------------------------------- X

Case No. 19-cv-18410

**COMPLAINT**

JURY TRIAL DEMANDED

     Plaintiffs College Essay Optimizer, LLC d/b/a College Essay Organizer and Metro Academic Prep, Inc., by their attorneys, Nixon Peabody LLP, as and for their Complaint against Defendant Simple Solutions, Inc., hereby allege as to their own actions, and upon information and belief as to the actions of others, as follows:

## NATURE OF ACTION

     1.     This action arises out of the wrongful acts of Defendant Simple Solutions, Inc. ("Defendant" or "Simple Solutions") in failing to properly manage and maintain Plaintiffs' valuable website and critical information contained therein.  Due to Defendant's improper actions and negligence, Plaintiffs' have suffered a total catastrophic loss of the website, the data, and the ability to continue as a business.

     2.     Plaintiff College Essay Optimizer, LLC d/b/a College Essay Organizer's ("CEO") is in the business of organizing college essay requirements and providing an essay management system—called Essay Roadmap®—for college applicants, parents, school counselors, and independent consultants in the field of college admission testing and applications, particularly with respect to college admission essays.  CEO has spent countless hours over the last ten years

performing research to compile data regarding college essay requirements in order to build its cutting-edge essay management system.

3.      Plaintiff Metro Academic Prep, Inc. ("MAP," together with CEO, "Plaintiffs") is a tutoring company that assists high school and college students with admissions, standardized test preparation, and academic tutoring.  CEO was an outgrowth of MAP's work guiding high-achieving students through the college admissions process.  CEO was developed as an easy-to-use online tool to streamline the college essay and application process for students worldwide as they prepare for one of the biggest challenges of their lives.  For the last two years leading up to April 2019, MAP has successfully utilized CEO as an operational tool for marketing and lead generation.

4.      Simple Solutions markets itself as a "full-service internet development, design and marketing company."  It employs a "team of web developers, database engineers, project managers, graphic designers, social media and search engine marketers," who have experience "developing complex web applications, redesigning websites, customizing e-commerce environments, managing paid search campaigns, and optimizing websites to improve search engine rankings."

5.      Pursuant to an agreement between CEO and Simple Solutions, it was Simple Solutions' obligation to, among other things, maintain the CEO website (located initially at the domain www.collegeessayoptimizer.com and eventually moved to the domain www.collegeessayorganizer.com (the "CEO website")), and to ensure there were sufficient backups of CEO data in order to prevent against a loss of data in the event of a hardware failure.

6.      The CEO website has played an integral role in the business model of MAP, which is the primary member of CEO.

7.     In April 2019, due to Defendant's wrongful acts, CEO's server and hard drives crashed during a server upgrade, resulting in the permanent loss of nearly two years' worth of critical data that comprised the entirety of Plaintiffs' work on this business to date.

8.     This incident was caused by the negligent acts or omissions of Simple Solutions. The loss of data was catastrophic to both CEO and MAP:  the CEO website is now useless and beyond repair, and CEO and MAP have lost their most critical operational tools for marketing and lead generation.

9.     Accordingly, CEO and MAP bring this action for a declaratory judgment and to recover related damages for the substantial harm caused to them by Simple Solutions.

## THE PARTIES

10.     College Essay Optimizer, LLC d/b/a College Essay Organizer is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in the State of New York.

11.     CEO has two members: Metro Academic Prep, Inc. and A-List Education, LLC. MAP is a corporation organized and doing business under the laws of the State of New York, with its principal place of business is in the State of New York.

12.     Upon information and belief, no member of A-List Education, LLC is a citizen or resident of the State of Maine.

13.     Upon information and belief, Simple Solutions, Inc. is a corporation organized and doing business under the laws of the State of Maine, with its principal place of business in the State of Maine.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)

because the parties are completely diverse and the amount-in-controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

15.     This Court has subject matter jurisdiction over this action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

16.     An actual justiciable controversy within the meaning of 28 U.S.C. § 2201 exists between CEO and MAP, on the one hand, and Simple Solutions, on the other, regarding whether Simple Solutions has an obligation to indemnify CEO and/or MAP under the terms of the parties' written agreement.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3), and because Defendant waived any objection based on improper venue or forum non conveniens to the conduct of any proceedings in the state or federal courts of the State of New Jersey in the parties' written agreement.

18.     This Court has personal jurisdiction over Simple Solutions because Defendant consented to the exclusive jurisdiction of the state and federal courts of the State of New Jersey for purposes of any proceedings arising out of the parties' written agreement.  Moreover, Defendant has certain minimum contacts with New Jersey such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

## **ALLEGATIONS**

### **The Agreement**

19.     On or about June 28, 2009, CEO entered an Independent Contractor Agreement with Simple Solutions (the "Agreement"), under which, among other things, Simple Solutions was engaged to perform certain services for CEO as an independent contractor with respect to

the CEO website—an ecommerce website that allows users to access college essay information for colleges' and universities' admission applications.[1]

20.     When CEO and Simple Solutions entered the Agreement, the contracting parties intended that MAP would be a third-party beneficiary of the contract.  Specifically, from the outset of the Agreement, Simple Solutions was aware that the CEO website would be used to, among other things, engage with students, parents, and schools to establish relationships with MAP and CEO—ranging from 1-on-1 test preparation, 1-on-1 college admissions support, partnerships with schools that resulted in diagnostic SAT/ACT testing, and referrals to private clients (students/parents) from those schools.

21.     Pursuant to paragraph 1 of the Agreement, Simple Solutions was specifically engaged to perform the Services set forth in Exhibit A to the Agreement.

22.     Those Services include, in relevant part, as follows:

> Contractor shall implement and maintain the CEO website and shall provide continued technology and marketing development of the website and all web assets associated therewith.  Contractor agrees that the Services shall include establishing, providing and maintaining, at all times throughout the Term, an interface between the CEO website and any server or electronic mail applications utilized by CEO in connection with its business. Simple Solutions shall make every reasonable effort to maintain operation of the CEO website however because many internet connectivity events and circumstances are beyond the control of Simple Solutions, Simple Solutions is not responsible for any delay or loss of data, lack of connection, slow connection, or any other such issues, except for any extended or unreasonable delays or losses caused directly by the actions or inactions of Simple Solutions. Simple Solutions will maintain redundant backups of data (code/database) on a regular basis and provide CEO with the ability to download/receive code/database backups. Simple Solutions will also provide CEO with 24/7/365 cell phone support and make every reasonable effort to ensure that collegeessayoptimizer.com is online and functioning with proper data and adequate speed.

*See* Agreement, Exhibit A.

23.     The Term of the Agreement commenced on the date it was entered, and was to

---

[1] Capitalized terms shall have the meanings given to them in the Agreement.

"continue in full force and effect until the earlier to occur of (a) Contractor's completion of the Services to the full satisfaction of CEO, or (b) one year after the date hereof."  Agreement ¶ 3. Significantly, the Agreement provides that the Term "shall be automatically renewed for an additional one-year period upon the terms and conditions stated herein unless (a) CEO has previously notified Contractor that the Services have been completed, or (b) either party has notified the other in writing not less than ninety (90) days prior to the end of the Term of such party's decision to terminate the Agreement."  *Id.*

24.     The Agreement was in full force and effect at all times relevant to this dispute.

25.     Paragraph 7 of the Agreement sets forth Simple Solutions' defense and indemnity obligations.

26.     Specifically, Simple Solutions agreed "to indemnify, defend and hold CEO harmless from and against any liability arising out of or in connection with (i) the negligent or willful acts of Contractor in the performance of its obligations hereunder, or (ii) the breach of Contractor of any of its obligations hereunder."

27.     Simple Solutions makes certain Representations and Warranties in the Agreement, including, among others, "that Contractor possesses the training, skills and expertise necessary to perform the Services in a competent and professional manner"; and that "Contractor agrees to provide the Services in a professional manner, using that degree of care and skill ordinarily exercised by and consistent with the standards of competent service providers performing comparable services in the same or similar locality." Agreement ¶ 8(a).

28.     Paragraph 11 of the Agreement provides the following with respect to Governing Law and Jurisdiction:

> This Agreement shall be governed and construed by the laws of the State of New Jersey.  Each party hereby irrevocably submits to the exclusive jurisdiction of the

state and federal courts of the State of New Jersey for purposes of any proceedings arising out of this Agreement.  Each party waives any objection which it may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court and waives personal service of any and all process upon such party.

**The CEO Website**

29.     Since at least as early as August 1, 2009, CEO has continuously provided college admissions services throughout the United States and the world for college applicants, parents, school counselors, and independent consultants, particularly with respect to college admission essays.

30.     CEO operates a website at www.collegeessayorganizer.com, which it has continuously operated for more than ten years to provide its services throughout the United States and the world.  CEO's website specifies the services it provides.

31.     Through the CEO website, CEO delivers users all School Application and Common Application supplemental questions in one place.  After establishing an account with CEO, a user receives access to the following information with respect to the schools to which a student intends to apply: (i) all required essay questions; (ii) each college's optional, program-specific, special applicant, and scholarship essay questions; (iii) each essay's exact length listed by word limit or character count; (iv) deadlines for regular decision, early decision, early action, rolling admission, and special programs; and (v) each college's key statistics (including SAT, ACT and GPA).

32.     The CEO website also provides access to CEO's Essay Roadmap® technology, which shows students all of their required college application essay questions in one place and how those essay questions overlap.  This groundbreaking algorithm allows students to write the fewest essays possible and work smarter.

33.     Simple Solutions implemented the CEO website and, since 2009, has performed

various services for CEO with respect to the CEO website, including those Services set forth in Exhibit A to the Agreement.

34.     In consideration of these alleged services, CEO has paid Simple Solutions more than $250,000 since 2009.

35.     From approximately in 2009 until 2017, CEO charged customers to use the tools available on the CEO website.  In 2017, however, CEO changed its business model.  Rather than charge customers for use of the CEO website, MAP began to utilize the website as an operational tool for MAP's employees, a marketing tool for MAP's services, and lead generation tool for MAP's services.  Specifically, students of parochial and boarding schools were provided with free access to the CEO website and tools.  Upon establishing an account on the CEO website, MAP received important member data regarding each new user, including users' names, contact information, and personalized college lists.  MAP used this member data to, among other things, distribute marketing materials and notifications to attend webinars.  Students who were introduced to MAP through CEO enrolled with MAP for tutoring and other college preparatory services.  The average spend for a converted client to MAP is approximately $10,000, and in many cases far exceeds this figure.  In the end, the change in CEO's business model led to massive increases in revenue and profit to MAP.

36.     CEO's valuation is directly tied to its ability to serve all MAP purposes; specifically, as an operational tool, for marketing, and for lead generation.

37.     Simple Solutions was well aware of the change to the CEO business model that took place in 2017; indeed, CEO paid Simple Solutions more than $15,000 since 2017 to transform the CEO website (*e.g.*, by installing new features) so that it could be used as an operational, marketing, and lead generation tool for MAP moving forward.

**The April 2019 Server and Hard Drive Crash**

38.     In early February 2019, Simple Solutions advised CEO that a server upgrade was necessary on the server that supported the CEO website.

39.     Over the next two months, through the course of conversations, CEO and Simple Solutions ultimately agreed that the server upgrade would be performed on or about April 23, 2019.

40.     Upon information and belief, the server upgrade was performed by Simple Solutions and/or at Simple Solutions' direction and control, Add2Net, Inc. d/b/a Lunarpages Internet Solutions ("Lunarpages")—the company that has hosted the CEO website since approximately 2009.

41.     Upon information and belief, on April 23, 2019, Simple Solutions and/or Lunarpages began preparing for the server upgrade by, among other things, commencing a manual backup of the server.

42.     On April 23, 2019, during the course of preparing for or performing the server upgrade, the server that supported the CEO website crashed twice, and both hard drives on which Simple Solutions and/or Lunarpages stored the CEO database crashed, corrupting the backups (the "April 2019 incident").

43.     On information and belief, Simple Solutions caused the April 2019 incident through its negligent acts or omissions.

44.     On information and belief, Simple Solutions negligently failed to maintain adequate backups of the CEO website.

45.     As a result of the April 2019 incident, CEO lost nearly two years of information, research, and development work (CEO paid Simple Solutions more than $15,000 for

development work alone since 2017); particularly, all of its member data (members' names, contact information, and personalized college lists), school data, and essay requirement data from approximately June 2017 through April 2019—thousands of entries that CEO worked meticulously to compile.  CEO also lost three years of blog entries, and total functionality of the CEO website for nearly one week.  CEO will not regain proper functionality of the CEO website.

46.     The aforementioned data and other information that was lost as a result of the April 2019 incident were critical to the business success and growth of MAP and CEO.  CEO paid researchers to collect this data, and uploaded it to the CEO database via a detailed, time-consuming algorithm.  CEO's value comes from its data.  Moreover, CEO had proven incredibly valuable to MAP over the last two years since MAP had begun using CEO as an operational tool, for marketing, and for lead generation.

47.     CEO also lost many, if not all, of the upgrades to the CEO website that it paid Simple Solutions to implement since April 2017—upgrades that were implemented to transform the CEO website's intended usability as an operational, marketing, and lead generation tool for MAP.

48.     Prior to the April 2019 incident, CEO had provided accurate, up-to-date data to its users for nearly ten years.  Because of the April 2019 incident, however, the data available on the CEO website is now outdated and effectively worthless to any potential users.

49.     As evidence of the damage caused to CEO, the usage and logins to the CEO website prior to the April 2019 incident were extremely high, but since the April 2019 incident CEO and MAP have been unable to promote CEO's usage to any new members or schools.  Additionally, since the April 2019 incident, CEO and MAP have received concerns and questions from, among others, schools that typically utilize the CEO website.  For the first time

since CEO's inception, CEO is not being used by any members, including students, parents, MAP employees, or schools, for this 2019-2020 college application season.

50.     The CEO website is now entirely useless.  MAP is no longer able to use CEO as a tool for operational, marketing, and/or lead generation purposes.

51.     The CEO website—managed solely by Simple Solutions—was home to the aforementioned data and information.

52.     Moreover, CEO understood, via the Agreement with Simple Solutions, and the communications between the parties, that Simple Solutions was maintaining daily backups and had set up a dedicated server to prevent the need for any additional backups.  As an example, in September 2009 (approximately three months after the Agreement was entered), Simple Solutions informed CEO that "it [was] probably not necessary for [CEO] to take [its] own backups" because "[t]he database is backed up automatically on a separate server, and [Simple Solutions does its] own manual backups too."  As another example, in July 2015, Simple Solutions advised that it had "a complete backup of all site files at another location off your CEO server."

53.     This turned out to be false. Simple Solutions failed to maintain sufficient backups of the CEO website.  In fact, Simple Solutions was able to recover data only through May 2017 because CEO alone had in its possession a backup of the website through and up to that time period. Simple Solutions had a backup of the CEO website from a much earlier time, rendering that backup worthless.

54.     As a result of the April 2019 incident, CEO has suffered damage in the form of, among other things, lost member data, lost development work, lost research data, permanent loss of function to the CEO website, and devastating damage to its reputation.  Moreover, MAP has

suffered damage because of the April 2019 incident in the form of lost ability to use the CEO website as an operational, marketing, or lead generation tool, and thus future lost profits.

55.     CEO and MAP have been damaged in an amount that cannot be readily determined at present, but which is believed to be greater than $1,250,000.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

56.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

57.     CEO and Simple Solutions are parties to the Agreement, which is a valid and enforceable contract, and was in effect at all relevant times.

58.     MAP is, and was at all relevant times, an intended third-party beneficiary of the Agreement.

59.     Paragraph 11 of the Agreement requires Simple Solutions "to indemnify, defend and hold CEO harmless from and against any liability arising out of or in connection with (i) the negligent or willful acts of Contractor in the performance of its obligations hereunder, or (ii) the breach of Contractor of any of its obligations hereunder."

60.     At all relevant times, CEO and MAP acted in accordance with the Agreement and performed all of their obligations thereunder.

61.     There is presently a justiciable dispute and actual controversy and disagreement between CEO and MAP, on the one hand, and Simple Solutions, on the other, regarding whether Simple Solutions must indemnify CEO and/or MAP under the terms of the Agreement for acting negligently and/or willfully, and breaching one or more of its obligations under the Agreement, in bringing about the April 2019 incident and/or in failing to maintain adequate backups of CEO data.

-12-

62.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, CEO and MAP in good faith request that the Court declare that Simple Solutions must indemnify CEO and MAP for any and all liability and damage that it caused to CEO and MAP in connection with the April 2019 incident, pursuant to the terms of the Agreement.

### SECOND CAUSE OF ACTION
**(Contractual Indemnification)**

63.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

64.     CEO and Simple Solutions are parties to the Agreement, which is a valid and enforceable contract, and was in effect at all relevant times.

65.     MAP is, and was at all relevant times, an intended third-party beneficiary of the Agreement.

66.     Paragraph 11 of the Agreement requires Simple Solutions "to indemnify, defend and hold CEO harmless from and against any liability arising out of or in connection with (i) the negligent or willful acts of Contractor in the performance of its obligations hereunder, or (ii) the breach of Contractor of any of its obligations hereunder."

67.     At all relevant times, CEO and MAP acted in accordance with the Agreement and met all of their obligations thereunder.

68.     Simple Solutions acted negligently and/or willfully, and breached one or more of its obligations under the Agreement, in bringing about the April 2019 incident and/or in failing to maintain adequate backups of CEO data.

69.     Simple Solutions is therefore contractually obligated to indemnify CEO for all liability and damage that Simple Solutions caused to CEO by reason of the aforementioned negligent and/or willful acts, as well as because of its breach of the Agreement.

-13-

70.     Simple Solutions is also obligated to indemnify MAP—as an intended third-party beneficiary of the Agreement—for all liability and damage that Simple Solutions caused to MAP by reason of the aforementioned negligent and/or willful acts, as well as because of its breach of the Agreement.

71.     Simple Solutions has directly and proximately caused damage to CEO and MAP in an amount that cannot be readily determined at present, but which is believed to be greater than $1,250,000, and pursuant to the terms of the Agreement, must indemnify CEO and MAP for their respective losses.

**THIRD CAUSE OF ACTION**
**(Breach of Contract)**

72.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

73.     CEO and Simple Solutions are parties to the Agreement, which was valid and in effect at all relevant times.

74.     MAP is, and was at all relevant times, an intended third-party beneficiary of the Agreement.

75.     Under the Agreement, Simple Solutions was specifically engaged to perform the following Services for CEO, among others: to "implement and maintain the CEO website"; to "establish[], provid[e] and maintain[], at all times throughout the Term, an interface between the CEO website and any server or electronic mail applications utilized by CEO in connection with its business"; to "make every reasonable effort to maintain operation of the CEO website"; to "maintain redundant backups of data (code/database) on a regular basis and provide CEO with the ability to download/receive code/database backups"; and to "make every reasonable effort to ensure that collegeessayoptimizer.com is online and functioning with proper data and adequate

speed."  Agreement, ¶ 1 and Exhibit A.

76.     Simple Solutions also represented and warranted that it "possesses the training, skills and expertise necessary to perform the Services in a competent and professional manner"; and that it "agrees to provide the Services in a professional manner, using that degree of care and skill ordinarily exercised by and consistent with the standards of competent service providers performing comparable services in the same or similar locality." Agreement ¶ 8(a).

77.     At all relevant times, CEO and MAP acted in accordance with the Agreement and performed all of their obligations thereunder.

78.     By causing the April 2019 incident through its acts and/or omissions, and by failing to maintain sufficient backups of the CEO website, Simple Solutions breached the above-referenced terms of the Agreement, among others, and thereby directly and proximately caused damage to CEO and MAP in an amount that cannot be readily determined at present, but which is believed to be greater than $1,250,000.

## FOURTH CAUSE OF ACTION
### (Negligence)

79.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

80.     Simple Solutions was under a duty of care to CEO and MAP to, among other things, make every reasonable effort to maintain the CEO website, ensure that the CEO website was online and functioning at all times, and ensure that there were sufficient backups of the CEO website in the event of a hardware or software malfunction that caused loss of data.

81.     By causing the April 2019 incident through its acts and/or omissions, and by failing to maintain sufficient backups of the CEO website, Simple Solutions breached the aforementioned duties, among others, that it owed to CEO and MAP.

-15-

82.     As a direct and proximate result of the Simple Solutions' breach(es), CEO and MAP have been damaged in an amount that cannot be readily determined at present, but which is believed to be greater than $1,250,000.

83.     The losses suffered by CEO and MAP were foreseeable to Simple Solutions.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**

84.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

85.     Defendant received a benefit from CEO in the form of, among other things, payment for Services under the Agreement amounting to more than $250,000 since 2009.

86.     Defendant's retention of the aforementioned benefit would be unjust.

87.     CEO expected remuneration from Defendant at the time it conferred the benefit.

88.     A reasonable person in Defendant's position would have expected to provide remuneration for the benefit conferred on it by CEO.

89.     As a result of the April 2019 incident, Defendant has been unjustly enriched beyond its contractual rights, in an amount to be proven at trial, but which exceeds $250,000.

**SIXTH CAUSE OF ACTION**
**(Breach of Implied Duty of Good Faith and Fair Dealing)**

90.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

91.     Defendant was bound by a duty of good faith and fair dealing in both the performance and enforcement of the Agreement.

92.     Defendant was precluded from doing anything that would have the effect of destroying or injuring the right of CEO and MAP to receive the benefits of the Agreement

93.     By causing the April 2019 incident through its acts and/or omissions, and by failing to maintain sufficient backups of the CEO website, Defendant acted in bad faith and, consequently, denied CEO and MAP the benefits of the Agreement.

94.     As a direct and proximate result of the Simple Solutions' breach(es), CEO and MAP have been damaged in an amount that cannot be readily determined at present, but which is believed to be greater than $1,250,000.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray for relief as follows:

a.  On Plaintiffs' First Cause of Action, for a declaration that Simple Solutions must indemnify CEO and MAP for any and all liability and damage that it caused to CEO and MAP in connection with the April 2019 incident, pursuant to the terms of the Agreement;

b.  On Plaintiffs' Second Cause of Action, awarding money damages, in an amount to be determined at trial, the exact amount of which cannot be ascertained at present but which is believed to be in excess of $1,250,000;

c.  On Plaintiffs' Third Cause of Action, awarding money damages, in an amount to be determined at trial, the exact amount of which cannot be ascertained at present but which is believed to be in excess of $1,250,000;

d.  On Plaintiffs' Fourth Cause of Action, awarding money damages, in an amount to be determined at trial, the exact amount of which cannot be ascertained at present but which is believed to be in excess of $1,250,000;

e.  On Plaintiffs' Fifth Cause of Action, awarding money damages, in an amount to be determined at trial, the exact amount of which cannot be ascertained at present but which is believed to be in excess of $250,000;

f.  On Plaintiffs' Sixth Cause of Action, awarding money damages, in an amount to be determined at trial, the exact amount of which cannot be ascertained at present but which is believed to be in excess of $1,250,000;

g.  An award for reasonable attorneys' fees and costs of the suit incurred herein; and

h.  For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues properly triable thereby.

Dated: September 26, 2019

**NIXON PEABODY LLP**

By: _____*/s/ Daniel C. Gibbons*_____
                Daniel C. Gibbons

50 Jericho Quadrangle
Jericho, New York 11753
T: (516) 832-7500
F: (516) 832-7555
dgibbons@nixonpeabody.com

*Attorneys for Plaintiffs College Essay*
*Optimizer, LLC d/b/a College Essay Organizer*
*and Metro Academic Prep, Inc.*